**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § <br> § <br> § <br> **vs.** § <br> § <br> **BRIAN O'NEAL HINES** § | **Criminal Action No.** <br> **3:19-CR-237-S** |

### FINDINGS, CONCLUSION AND RECOMMENDATION

By order of reference dated September 16, 2020 (doc. 25), before the Court for recommendation is the *Petition for Offender Under Supervision*, filed February 3, 2020 (doc. 4). The defendant appeared in person and through counsel for a final revocation hearing on September 17, 2020. After consideration of the filings, evidence, testimony, oral argument, and applicable law, the defendant should be continued on his current term of supervised release.

### I.  BACKGROUND

Brian O'Neal Hines (Defendant) was charged in a one-count indictment out of the Southern District of Texas with conspiracy to transport undocumented aliens. (*See* doc. 2 at 6.) He pleaded guilty, and by judgment entered on March 14, 2018, he was sentenced to 20 months of imprisonment, to be followed by a three-year term of supervised release. (*See id.* at 8-10.) He began his term of supervised release on December 28, 2018, and jurisdiction was transferred to the Northern District of Texas on May 13, 2019. (*See* doc. 1.)

**A.    Petition**

On January 30, 2020, the supervising United States Probation Officer (USPO) submitted a petition for offender under supervision (Petition) alleging the following violation:

**Violation of Mandatory Condition**

You must not commit another federal, state or local crime.

**Nature of Noncompliance**

Brian O'Neal Hines violated this condition of supervised release when he allegedly committed a theft as evidenced by his arrest on December 13, 201 9. According to the Dallas, Texas, police report, on December 3, 2019, officers were dispatched to Anytime Fitness located in Irving, Texas, regarding a theft. Specifically, the complainant advised she placed her purse in a storage bin and when she returned her debit card and $287 in cash was missing. Security personnel reviewed the video surveillance and observed Mr. Hines, who is a member at the gym, enter the locker area and placed his bag on top of the locker. Mr. Hines then placed his hand in the storage bin where the complainant's purse was located. He then left the area, but he returned approximately five minutes later and put his back to the camera to block the camera's view. Despite this, Mr. Hines can be seen with his hand in the complainant's storage bin. A full review of the surveillance showed no one else in the area. The complainant's debit card was used to purchase $36.71 in gasoline at a Shell Gas station in Dallas. The reporting staff at the gym indicated this is the second incident in which Mr. Hines was accused of taking property from another member at the gym; however, the police were not called about the previous offense. On December 13, 2019, Mr. Hines was arrested at his place of employment by officers with the Dallas, Texas, Police Department; and during his interview with officers subsequent to the arrest, he admitted to committing the theft. Mr. Hines was released on bond the same day of his arrest and the case, Theft More Than $100 But Less Than $750, Case No. MB 1975294, is pending in Dallas County Criminal Court 3, Dallas, Texas. On January 7, 2020, a warrant was issued when Mr. Hines failed to appear for court and the warrant remains outstanding.

(*See* doc. 4.)

On February 3, 2020, the Court ordered that a summons be issued for Defendant's appearance based on the Petition. (*See* doc. 4.) A summons was issued for Defendant's appearance on March 27, 2020, for a revocation hearing. (*See* doc. 6.) By electronic order dated March 13, 2020, the hearing was reset for May 14, 2020.

**B.    Addendum**

On April 24, 2020, the USPO submitted an Addendum to the Petition (Addendum) alleging the following violations:

**Violation of Mandatory Condition**

The defendant shall not commit another federal, state, or local crime.

2

The original petition references a theft in the Personal History section of the report which occurred at a Walmart in Grapevine, Texas, on January 19, 2020. Since that time, on April 13, 2020, a warrant for Mr. Hines' arrest was issued for Theft of Property, $750 to $2500, a Class A misdemeanor, Case No. 2000003375. According to the police report, video surveillance from a Walmart located in Bedford, Texas, showed Mr. Hines and an unidentified accomplice in the electronics department picking up several items including several pair of Beats by Dre headphones. When a store employee and a customer approached the area where Mr. Hines and his accomplice were located, they dropped the items and immediately left the store without making a purchase. On the same day, Mr. Hines and his accomplice were observed on video surveillance at another Walmart location in Grapevine. Specifically, Mr. Hines was the driver of his Infinity truck which was observed outside of the store. Mr. Hines parked his vehicle and entered the store through the Home and Garden entrance. He proceeded to the restroom and then exited the store, returning to his vehicle. Mr. Hines then moved his vehicle closer to the exit in the Home and Garden area. His accomplice was simultaneously in the electronics department with a key, that was later determined to have been stolen from the Walmart in Bedford. The accomplice attempted to open the electronic cases using the stolen key; however, when the key did not work, he took 20 hard drives and a motorized unicorn before exiting the store through the Home and Garden exit, bypassing the cash registers. The accomplice was seen entering Mr. Hines vehicle with the stolen items and he placed them in the rear seat. The accomplice then ran back inside the Walmart, grabbed a chain saw, exited the store without paying for the item, and ran back to the vehicle where Mr. Hines was waiting. The total value of the merchandise stolen was approximately $1,873.97. Mr. Hines' license plate was captured by surveillance as well as a physical description which matched his. Mr. Hines was made aware of this warrant during a telephone call with United States Probation Officer Jeannine Williams (USPO Williams) on April 20, 2020. On April 21, 20202, Mr. Hines self-surrendered; and he was released on bond April 22, 2020.

(*See* doc. 13.)

C. **Notice of Intent**

On September 3, 2020, *Defendant's Amended Notice of Intent* was filed to advise the court that Defendant intended to plead true to the one violation alleged in the Petition. (*See* doc. 24.) The notice also stated Defendant's understanding that upon entry of his plea of true, the Government would recommend that he be sentenced to no more than six months. (*See id.*)

D. **Revocation Hearing**

After several agreed motions for continuance were filed and granted, Defendant appeared in person and through counsel for a final revocation hearing on September 17, 2020. (*See* docs. 15, 16,

3

18, 19, 20, 21, 22, 23.) After his competence was established, Defendant testified under oath that he understood the violations alleged in the Petition and the range of punishment for those violations. He understood that he had the right to plead not true and have a hearing concerning whether he committed those violations. Despite his understanding, Defendant knowingly and voluntarily consented to enter a plea of true to the violations alleged in the Petition, as set forth in his *Amended Notice of Intent*. The Government agreed on the record that it was proceeding only on the allegations set forth in the original Petition.

Counsel argued that Defendant's plea of true should be a heavy factor in mitigation because it saved the Government from having to establish the violation alleged in the Petition by calling several non-party witnesses, and that the burden of appearing to testify during a pandemic was higher for those witnesses. He noted that nine months had passed since the alleged violation, that Defendant had arguably been compliant with his conditions since then, and he had appeared for hearing on a summons. He also argued that Defendant had faced numerous challenges during his youth that made him ill-prepared to succeed, including mental illness and the criminal history of almost all of his siblings. Finally, counsel noted that Defendant had been very good about getting a job, did not have any allegations of illegal drug use, and that he had just started a new job that week at General Motors. Defendant spoke on his own behalf, accepting responsibility for his actions.

The Government pointed out that Defendant had previously had similar issues and recommended a six-month term of imprisonment.

At the conclusion of the hearing, it was orally recommended that the plea of true be accepted by the district judge, and that Defendant be continued on his current conditions of supervised release based on the request of the U.S. Probation Officer. The officer had notified the court that Defendant

4

had begun a very good job that week at General Motors making $19 per hour, that he had been very compliant with his conditions, and that she truly believed that Defendant had turned a corner, so she was committed to working with him to ensure that he completed his term of supervised release. Defendant was advised of his right to appear and speak, and to have his counsel appear and speak, before the assigned district judge prior to sentence being imposed, and he voluntarily waived that right in writing.

## II. ANALYSIS

Section 3583(e)(3) of Title 18 provides that after considering the factors set out in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), a court may

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case[.]

18 U.S.C. § 3583(e)(3). The relevant factors in § 3553(a) to be considered are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> \*\*\*
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> \*\*\*
> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title

        28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. §§ 3553(a), 3583(e)(3).[1] Revocation of a term of supervised release is mandatory if the defendant possesses a controlled substance, possesses a firearm, refuses to comply with drug testing, or tests positive for illegal controlled substances more than three times over the course of one year. 18 U.S.C. § 3583(g).

Based on his knowing and voluntary plea of true, the Court finds that Defendant has violated the mandatory condition alleged in the Petition. As set out in the Petition, the statutory maximum term of custody upon revocation of Defendant's supervised release is 2 years. (*See* doc. 4, citing 18 U.S.C.

---

[1] The Fifth Circuit Court of Appeals has held that courts may not consider the factors listed in § 3553(a)(2)(A), which include "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," when revoking a term of supervised release. *United States v. Miller*, 634 F.3d 841 (5th Cir. 2011). Nor may courts impose or lengthen a prison term in order to foster a defendant's rehabilitation. *United States v. Tapia*, 131 S.Ct. 2382 (2011).

6

§ 3583(e)(3).)  Based upon a violation grade of C and a criminal history category of VI, the resulting range of imprisonment under United States Sentencing Guideline (USSG) § 7B1.4(a) is 8 to 14 months.  (*Id.*)  Defendant may also be placed back on supervised release following any term of imprisonment imposed upon revocation, but the maximum term of supervised release must not exceed the term of supervised release authorized by state for the offense that resulted in the original term of supervised release, less any term of imprisonment imposed upon revocation.  (*Id.*, citing 18 U.S.C. § 3583(h); *U.S v. Jackson*, 559 F.3d 368 (5th Cir. 2009).)  Defendant is subject to a maximum term of supervised release of up to three years, minus any revocation sentence.  (*Id.*)

After considering the relevant factors identified in § 3583(e) that are set forth in § 3553(a), and not considering any factor that it is precluded from considering under Supreme Court or Fifth Circuit authority, the Court finds that continuing Defendant on his current conditions of release is appropriate.  Revocation is not mandatory, and he has not been convicted of the new state charges alleged in the Petition.  By pleading true, he has saved Government resources in the midst of a global pandemic and has accepted responsibility for his actions.  Defendant just obtained and began a very good job at General Motors making $19 per hour despite the pandemic.  His supervising probation officer reported that he has been very compliant with his conditions in the last few months, and that she truly believes that he has turned a corner, so she is committed to working with him to ensure that he successfully completes his term of supervised release.  The supervising officer is in the best position to gauge Defendant's progress and has requested an opportunity to work with him based on his recent progress.  Continuing him on his current conditions will afford him the opportunity to continue his progress, including by allowing him to keep a new job (which he would likely lose it if revoked) that provides him with a means of successfully supporting himself in a law-abiding manner.

## III. RECOMMENDATION

The defendant's plea of true should be accepted, and he should be continued on his current term of supervised release.

**SO RECOMMENDED on this 21st day of September, 2020.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE